UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW CARTER,<br><br>              Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | 4:23-CV-04007-KES<br><br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED, GRANTING RESPONDENT'S MOTION TO DISMISS PETITIONER'S § 2255 MOTION, AND RULING ON PETITIONER'S MISCELLANEOUS MOTIONS |

Petitioner, Matthew Carter, filed a motion under 28 U.S.C. § 2255 to vacate, correct, or set his aside his sentence. Docket 1.[1] The matter was referred to United States Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B) and the District of South Dakota's Civil Local Rule of Practice 72.1.A.2(b), which designates to the magistrate judge the duty to prepare proposed findings and recommendations for the disposition of habeas petitions. The United States filed a motion to dismiss. Docket 22. Carter filed numerous motions, including a motion for mistrial (Docket 8), a motion for judgment in his favor (Docket 25), a motion for relief from judgment or order (Docket 32), a motion challenging the legality of the underlying indictment and superseding indictment (Docket 33), and motions to preserve rights (Dockets 34, 35). The

---

[1] The court cites to documents from this civil habeas file using the court's assigned docket number. The court cites to documents from Carter's underlying federal criminal case, *United States v. Carter*, 4:21-CR-40073-KES (D.S.D.), using the court's assigned docket number preceded by "CR."

magistrate judge denied Carter's motion to challenge the legality of the indictment and superseding indictment and his motion for relief from judgment or order. Dockets 40, 41. The magistrate judge recommended granting the United States's motion to dismiss Carter's § 2255 motion with prejudice. Docket 42 at 40. The magistrate judge also recommended that Carter's additional pending motions be denied. *Id.* at 41. Carter timely filed objections to the report and recommendation. Docket 48. The United States does not object to the report and recommendation. Docket 51. Since the magistrate judge's report and recommendation was filed, Carter has filed various motions. *See* Dockets 43, 47, 53, 54, 55, 56, 57, 59, 60, 61, 62, 64, 66, 67, 68, 70.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND[2]

In late December 2020, E.W., Nycole Morkve's five-year-old daughter, disclosed to her mother that Carter, who was Morkve's boyfriend, had licked her genitals.[3] *State v. Carter*, 66 CRI 21-000016 at 2548–49 (JT Vol. 1 at 66–67). Morkve did not immediately report to law enforcement what E.W. had disclosed to her, but Morkve ended her relationship with Carter. *Id.* at 2557–58 (JT Vol. 1 at 75–76). While E.W. was with her grandmother during the Christmas holiday, E.W. made a similar disclosure, which E.W.'s grandmother captured on video and reported to law enforcement. *Id.* at 2599, 2601–02 (JT Vol. 1 at 117, 119–20). After Morkve had ended her relationship with Carter, she noticed blood in E.W.'s underwear. *Id.* at 2562 (JT Vol. 1 at 80). Morkve took E.W. to the emergency room to be evaluated. *Id.* During the evaluation, E.W. tested positive for gonorrhea, which caused Morkve to report that E.W. had disclosed that Carter had licked her genitals. *Id.* at 2563–64 (JT Vol. 1 at 81–82).

The Yankton Police Department received a referral from the South Dakota Department of Social Services stating that a young female had been sexually assaulted by her mother's boyfriend. *Id.* at 2843 (JT Vol. 2 at 96). The next day, the Yankton Police Department received a report from a healthcare provider that the same young female had heath issues that could be attributed

---

[2] The court outlines the factual background relevant to Carter's objections and his pending motions.

[3] The court, in accordance with Federal Rule of Evidence 201, takes judicial notice of Carter's state court proceedings. *State v. Carter*, 66 CRI 21-000016 (Yankton Cnty).

to sexual assault. *Id.* at 2843–44 (JT Vol. 2 at 96–97). Joseph Erickson, a detective with the Yankton Police Department, obtained a search warrant authorizing him to collect a urine sample and throat sample from Carter. *Id.* at 2845–46 (JT Vol. 2 at 98–99). After the samples were collected and after Carter was advised of his *Miranda* rights, Carter voluntarily submitted to an interview with Erickson at the Yankton Safety Center. *Id.* at 2853–54 (JT Vol. 2 at 106–07). The interview was recorded. *Id.* at 2853 (JT Vol. 2 at 106). During the interview, Carter made several contradictory statements about his relationship with E.W. *Id.* at 2858–60, 2867–68 (JT Vol. 2 at 111–13 , 120–21). But throughout the interview, even after being confronted with E.W.'s test results, Carter denied doing anything wrong. *Id.* at 2868, 2890–91 (JT Vol. 2 at 121, 143–44). Because Carter denied any wrongdoing, he argues that he should have been released after the interview. Docket 48 at 2. After the interview, Carter was taken into custody, *Carter*, 66 CRI 21-000016 at 1793, and he remained in custody at the Yankton County Jail until he was indicted in state court on a charge of sexual contact with a child under the age of 16 on January 11, 2021. *Carter*, 66 CRI 21-000016 at 1–2. Subsequently, the state court indictment was superseded with a charge of first-degree rape of a child less than 13 years old. *Id.* at 59–60.

Telephone calls and text messages Carter sent from the Yankton County Jail led to his indictment in federal court on May 5, 2021, on a single count of possession of child pornography between the dates of December 29, 2020, and January 14, 2021, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(B)(2), and

4

2256(8)(A). CR Docket 1. A superseding indictment was filed changing the dates of the alleged unlawful conduct to between February 15, 2010, and January 14, 2021. CR Docket 42. A jury trial on Carter's federal charges took place on January 25, 2022, to January 26, 2022. CR Docket 66, 68, 74. The jury returned a guilty verdict. CR Docket 74. A jury trial on Carter's state court charge was held in Yankton County from January 31, 2022, to February 2, 2022. *State v. Carter*, 1 N.W.3d 674, 685 (S.D. 2023). The jury found Carter guilty of first-degree rape in violation of SDCL § 22-22-1(1). *Id.* The Eighth Circuit Court of Appeals affirmed Carter's federal conviction and sentence. CR Docket 122. The South Dakota Supreme Court affirmed his state conviction and sentence. *Carter*, 1 N.W.3d at 697.

The Yankton County Jail has a system that records phone calls and text messages sent by inmates. CR Docket 103 at 5 (JT Vol. 1 at 5). While Carter was in custody at the Yankton County Jail, he implored his father during a telephone call to go to Carter's residence and obtain four or five items located above the ceiling tiles over the bathroom toilet. *Id.* at 22 (JT Vol. 1 at 22). After Erickson listened to the recorded call, Erickson went to Carter's home to search for the items Carter referenced during the call. *Id.* at 21, 40 (JT Vol. 1 at 21, 40). Erickson testified that he had legal authority to enter Carter's residence. *Id.* at 21 (JT Vol. 1 at 21).[4] The sense of urgency in Carter's voice

---

[4] The state court record provides additional details regarding Erickson's authority to enter Carter's residence. After Erickson listened to a recording of the January 14, 2020, phone call, he contacted Carter's parole officer, who authorized a search of Carter's residence. *Carter*, 66 CRI 21-000016 at 442. There were multiple parole officers present during the search. *Id.*; *see also*

during this phone call led Erickson to suspect there may be items of evidentiary significance in Carter's home. *Id.* at 22 (JT Vol. 1 at 22). A recording of this phone call was introduced into evidence during Carter's federal criminal trial and played for the jury. *Id.* at 7, 18 (JT Vol. 1 at 7, 18). During the search, law enforcement officers retrieved from above the ceiling tiles above the toilet in Carter's bathroom a knife, an A power mobile storage system, and a Western Digital computer hard drive. *Id.* at 22–23, 38 (JT Vol. 1 at 22–23, 38). These items were taken into evidence, and Erickson obtained a search warrant to permit a forensic examiner to search Carter's electronic devices for evidence of a crime. *Carter*, 66 CRI 21-000016 at 2878 (JT Vol. 2 at 131).

On January 18, 2021, four days after Carter had directed his father to retrieve the four or five items from above his bathroom ceiling tiles, Carter sent his father another text message and followed up with a telephone call. CR Docket 103 at 26–29 (JT Vol. 1 at 26–29). A copy of the text message and a recording of the telephone call were admitted into evidence during Carter's federal criminal trial. *Id.* at 7–8 (JT Vol. 1 at 7–8). The text message and excerpts of a transcript of the telephone call are set out in the magistrate judge's report and recommendation and are not repeated here. Docket 42 at 6–7. During those calls, Carter pleaded with his father to retrieve items and stressed that his request was imperative. *Id.*

---

*Carter*, 1 N.W.3d at 697 ("At the time of his arrest and the search of his residence by law enforcement, Carter was on parole . . . . Detective Erickson testified that the search was approved by Carter's parole officer.").

Kendra Russell, the certified forensic computer examiner who examined Carter's electronic devices, testified during his federal trial. CR Docket 103 at 47–48 (JT Vol. 1 at 47–48). Russell testified that the Western Digital hard drive found above Carter's bathroom ceiling tiles contained 60 images of child pornography. *Id.* at 71–72 (JT Vol. 1 at 71–72). The images were saved to the hard drive in February and March 2010, but they had been last accessed for viewing on December 19, 2020. *Id.* at 74, 88 (JT Vol. 1 at 74, 88). During cross-examination, Russell admitted that she could not determine who had accessed the child pornography images on December 19, 2020. *Id.* at 103 (JT Vol. 1 at 103). Russell testified that the Western Digital hard drive had been examined for fingerprints, and Carter's fingerprints were not found on the device. *Id.* at 113 (JT Vol. 1 at 113). The fingerprints that were found on the device were not sufficient for comparison. *Id.* at 115 (JT Vol. 1 at 115). But the Western Digital hard drive contained information linking it to Carter, including a receipt addressed to him, several photographic images of him, and a letter he had written. *Id.* at 55 (JT Vol. 1 at 55). Russell also testified that she had found some tools on the Western Digital hard drive that would permit a user to anonymize an IP address, making it appear that the user is somewhere other than the user's actual geolocation. *Id.* at 115 (JT Vol. 1 at 115).

Russell also examined Carter's cell phone. *Id.* at 91 (JT Vol. 1 at 91). During the examination, Russell did not find any child pornography on his cell phone. *Id.* But Russell did find incest-related internet searches Carter had conducted using his cell phone in December 2020. *Id.* at 93–97. Russell also

7

discovered that Carter had downloaded to his phone a scholarly article about incest. *Id.* at 97.

During Carter's federal trial, the defense did not put on any witnesses or evidence. CR Docket 104 at 6 (JT Vol. 2 at 147).

## DISCUSSION

## I.   **Magistrate Judge Duffy's Report and Recommendation**

Magistrate Judge Duffy's report and recommendation contains a complete discussion of the procedural and factual background of this case. Docket 42 at 1–15. Similarly, the report and recommendation thoroughly analyzes Carter's claims for relief set forth in his initial § 2255 motion and numerous other pleadings, many of which are not permitted by the applicable rules, but which the magistrate judge liberally construed and considered. *Id.* at 16–40. The court adopts the magistrate judge's report and recommendation as modified by this order to address Carter's objections.[5] As discussed below, Carter's objections are overruled, and the government's motion to dismiss Carter's petition (Docket 22) without an evidentiary hearing is granted.

---

[5] In his objections, Carter argues that the "FACTS are wrong and are not at all correct[.]" Docket 48 at 1. Carter's factual objections relate to the State of South Dakota's investigation of state crimes and subsequent detention. To address these objections, the court has modified the report and recommendation to provide citations to the state court proceedings.

II. **Carter's Objections to Magistrate Judge Duffy's Report and Recommendation**

A. **Facts**

1. **Beginning Custody Date**

The report and recommendation states that "[o]n December 30, 2020, Mr. Carter was taken into custody in Yankton County, South Dakota and detained at the Yankton County Jail." Docket 42 at 2. Carter calls this statement a "lie" and attaches a copy of a Yankton County Sheriff report indicating that he was booked in the Yankton County Jail on December 31, 2020. Docket 48 at 2, 19. Because Carter did not submit the booking report before the report and recommendation was filed, the magistrate judge did not have this document available, but the magistrate judge did have all of Carter's other submissions available, including his motion for mistrial (Docket 8) and supporting affidavit (Docket 10). Carter's motion for mistrial states that he "was in the custody of the Yankton County Jail between December 30th 2020 – January 14th 2021." Docket 8 at 1. His affidavit, which he signed in front of a notary after attesting that the contents are "true and correct to the best of [his] knowledge[,]" states that "[b]etween the dates 12/30/2020 – 01/14/2021 I, Matthew Allan Carter, was in the custody of the Yankton County Jail[.]"[6] Docket 10 at 1, 20. In this case, whether Carter was detained on December 30 or December 31 is of no moment, and it was reasonable for the magistrate

---

[6] The report and recommendation acknowledges that "Mr. Carter, by his own admission, was detained in the Yankton County Jail from December 30, 2020, to January 14, 2021." Docket 42 at 26.

judge to incorporate the initial date of detention set forth in Carter's motion for mistrial and affidavit. Carter's objection related to the date on which he was taken into custody is overruled.

### 2. Gonorrhea Test Result

The report and recommendation notes that "Carter was infected with gonorrhea[.]" Docket 42 at 11 n.2 (citing CR Docket 91 at 15 ¶ 44). According to Carter's objection, he has never tested positive for gonorrhea. Docket 48 at 2, 4. Carter submitted a copy of the urine sample test results, which were negative for gonorrhea. Docket 24 at 4. But he did not provide a copy of the throat swab test results, which were positive for gonorrhea. *Carter*, 66 CRI 21-000016 at 1322; *see also id.* at 1794. The throat swab test results were admitted as an exhibit during Carter's state criminal trial. In fact, the throat swab test results and the urine test result were part of the same exhibit, State's Exhibit 32. *Id.* at 1322–25. Further, as noted in the report and recommendation, the final PSR states, "A Search Warrant was obtained to collect blood and urine from the defendant, and it was discovered he had gonorrhea as well." CR Docket 91 at 15 ¶ 44. Carter's objection relies on a portion of an exhibit, which he submitted, but other pages of the same exhibit establish that his objection has no merit. Carter's objection, which is a clear misrepresentation of the record and attempt to mislead the court, is overruled.

### 3. Parole Hold

The report and recommendation "infers that Mr. Carter's state detention was pursuant to a parole hold as he was on parole at the time E.W.'s

allegations were disclosed to authorities." Docket 42 at 19 n.8. Carter objects and asserts "This is A LIE!" Docket 48 at 13. Carter attached to his objections a May 6, 2021, parole violation report revoking his parole and directing his return to prison. *Id.* at 24–25. In his objections, Carter also asserts that his parole officer had no involvement in his December 31, 2020, detention and was not even aware that he had been arrested until the indictment and arrest warrant were issued. *Id.* at 3–4; *see also id.* at 7 (arguing "[t]he Parole Office didn't 'detain' [him]"). Carter's objection is overruled because it misconstrues the parole violation report and again misrepresents the state court record. According to the parole violation report, Carter sent a "kite" requesting that his parole status be rescinded and that he be remanded to the care of the South Dakota Department of Corrections. *Id.* at 24–25. Carter was returned to prison based on this request. *Id.* at 25. Revoking Carter's parole, based on his request, is different than taking him into custody on a parole hold based on a suspected violation of the terms of his parole.

Carter's objection that his parole officer had no involvement in his December 31, 2020, detention is not well founded and is overruled. The state court record indicates that parole agents transported Carter to the medical facility where the urine sample and throat swab were obtained on December 31, 2020. *Carter*, 66 CRI 21-000016 at 1786. After the samples were obtained, parole agents transported Carter to the Yankton Safety Center, where he was interviewed. *Id.* During the interview, Erickson informed Carter that he had a parole detainer. *Id.* at 1793. Erickson testified during a pretrial conference in

state court that after the interview Carter was taken into custody on a parole hold and held at the Yankton County Jail. *Id.* at 439; *see also id.* at 1786.

### B.    Alleged Illegal Seizure without Reasonable Suspicion or Probable Cause

Carter repeatedly objects to the magistrate judge's report and recommendation on the grounds that he was illegally seized on December 30 or 31, 2020, and held without reasonable suspicion or probable cause until he was indicted by a Yankton County grand jury on January 11, 2021. *See* Docket 48 at 1–5, 7, 9–12, 17 (objections 1, 2, 3, 4, 5, 7, 8, 11, 12, 13, 16, 17, and 18). Magistrate Judge Duffy recommended that Carter's claims relating solely to his state court conviction be dismissed because they are not cognizable in this § 2255 proceeding. Docket 42 at 18–19. The court agrees that Carter's claims that he was arrested without probable cause and illegally detained in violation of his Fourth Amendment rights were properly dismissed because they are unrelated to the federal sentence he seeks to vacate.[7]

In an attempt to overcome the argument that the alleged violations of Carter's Fourth Amendment rights do not relate to the federal sentence he seeks to vacate, Carter argues that that his illegal arrest on December 30 or 31, 2020, produced the "illegally obtained/seized evidence used specifically in this federal case. They go hand and hand and are fruits of the poisonous tree! Which is why this is a constitutionally illegal use of evidence illegally obtained!"

---

[7] In his state court criminal proceedings, Carter did not argue that his arrest and subsequent pre-indictment detention were unlawful. Similarly, he did not raise these issues in his direct appeal to the South Dakota Supreme Court. *See Carter*, 1 N.W.3d at 674–97.

12

Docket 48 at 12 (capitalization in original omitted). This objection is overruled for two reasons.

First, Carter cannot raise claims in this § 2255 proceeding that could have been, but were not, raised in his direct appeal. *United States v. Frady*, 456 U.S. 152, 162, 164–65 (1982); *United States v. Darden*, 915 F.3d 579, 586 (8th Cir. 2019). In his direct appeal, Carter did not argue that his Fourth Amendment rights had been violated. *See* CR Docket 122. Carter's claim is procedurally defaulted, and the court agrees with the magistrate judge's conclusion that Carter has failed to demonstrate "actual innocence" under the exacting standard articulated in *Schlup v. Delo*, 513 U.S. 298, 315 (1995). *See* Docket 42 at 24.

Second, Carter's objection wholly disregards the fact that on January 14, 2021, when Carter made the telephone call that led to the discovery of a device in his residence containing child pornography, Carter had been indicted by a grand jury in Yankton County and was in custody pursuant to an arrest warrant. In fact, Carter filed a copy of the state court indictment and arrest warrant to support his § 2255 motion. Docket 24 at 5–6, 11–12. Carter's objections arguing that he was illegally seized and held without reasonable suspicion or probable cause at the time he made the telephone call that resulted in the federal child pornography charges are overruled.

## C.    Alleged Illegal Superseding Indictment

On May 4, 2021, Carter was indicted in federal court on a single count of possession of child pornography between the dates of December 29, 2020, and

January 14, 2021, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(B)(2), and 2256(8)(A). CR Docket 1. A superseding indictment was filed on December 21, 2021, charging Carter with the same violation of law for possession of child pornography, but changing the dates between February 15, 2010, and January 14, 2021. CR Docket 42. In his objections to the report and recommendation, Carter argues that the superseding indictment, CR Docket 42, is illegal because it covers conduct outside of the five-year statute of limitations. Docket 48 at 6–7, 16–17. Carter also asserts that "there is no excuse for not 'MOTIONING TO DISMISS' an ILLEGAL indictment." *Id.* at 12.

It is not clear that Carter alleged that his counsel was ineffective for not moving to dismiss the superseding indictment before he filed his objections to the magistrate judge's report and recommendation. *See generally* Dockets 1, 8, 10,[8] 24, 31, 34, 35. While the government's motion to dismiss was pending, Carter filed a motion in this § 2255 proceeding challenging the superseding indictment because it "seems to be past South Dakota's statute of limitations set at 7 years[.]" Docket 33 at 2 (citing SDCL § 23A-42-2). Magistrate Judge Duffy denied Carter's motion challenging the legality of the superseding indictment because his arguments were based solely on provisions of South Dakota law, and Carter was charged in federal court for violations of federal law. Docket 41. Magistrate Judge Duffy properly denied Carter's motion challenging the superseding indictment.

---

[8] In his January 26, 2023, affidavit Carter alleges that his counsel failed to object to the superseding indictment on the grounds that it was "incorrect" because he was in jail within the dates listed. Docket 10 at 19.

In his motion to reconsider the denial of his motion challenging the superseding indictment, Carter argues, without citing any federal statute, that the "Statute of Limitations under FEDERAL LAWS is only 6 years and not 7 years (like SD)." Docket 43 at 3. In his objections to the report and recommendation, Carter cites 18 U.S.C. § 3282[9] and argues that statute of limitations is five years. Docket 48 at 6.

Because Carter was charged with possessing child pornography, a felony under 18 U.S.C. §§ 2252A(5)(B) and 2252A(b)(2), 18 U.S.C. § 3299 is applicable. This section provides "[n]otwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any . . .  felony under chapter . . . 110 (except for section 2257 and 2257A)[.]" 18 U.S.C. § 3299 (footnote omitted). Chapter 110 of the United States Code includes 18 U.S.C. § 2251 through 18 U.S.C. § 2260A. Section 2252A, which is entitled "Certain activities relating to material constituting or containing child pornography," is not one of the excluded sections. *See also United States v. Coutentos*, 651 F.3d 809, 817 (8th Cir. 2011) (recognizing that as of July 27, 2006, § 3299 is the applicable limitations period for any felony under 18 U.S.C. § 2252A).

In his motion preserving rights (Docket 64), Carter again argues that the general statute of limitations, 18 U.S.C. § 3282, applies to the offense of

---

[9] This statute provides that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed." 18 U.S.C. § 3282.

possession of child pornography. But the cases Carter cites involved allegations of child pornography that occurred before Congress promulgated § 3299 in July 2006. In the superseding indictment, Carter was charged with possessing child pornography between February 15, 2010, and January 14, 2021. Because the conduct Carter was charged with occurred after July 2006, § 3299 applies. Carter's motion for reconsideration of the order denying his motion challenging the legality of the superseding indictment (Docket 43) is denied. His objections to the report and recommendation contending that the superseding indictment is illegal are overruled. His motion preserving rights (Docket 64) is denied.[10]

As the court previously noted, it does not appear that Carter argued that his counsel was ineffective for not moving to dismiss the superseding indictment before he filed his objections to the magistrate judge's report and recommendation. Even if his § 2255 motion and subsequent filings could fairly be construed to assert such a claim, the claim fails. Carter's counsel, as a matter of law, was not ineffective because she did not argue that a superseding indictment to which § 3299 applies is time-barred. Section 3299 provides that there is no time limitation for felony possession of child pornography. *See*

---

[10] The Federal Rules of Civil Procedure, the District of South Dakota's Civil Local Rules of Practice, and the Rules Governing Section 2255 Proceedings for the United States District Courts do not provide for motions preserving rights. Although Carter is a pro se litigant, he still must comply with the applicable rules of procedure. *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005). Repeatedly filing motions not permitted by the applicable rules to avoid time limitations for objections, briefs, and similar pleadings presenting a party's arguments and authorities is not appropriate.

*United States v. Isip*, 2022 WL 1120111, at *4 (D. Del. Apr. 14, 2022) (finding defense counsel was not ineffective for not raising a statute of limitations defense to receipt of child pornography under § 2252 when the conduct in issue occurred after July 2006).

### D.    Appointment of Counsel and Evidentiary Hearing

"Due to the obvious complexity of the case[,]" Carter argues that he should have "been granted an attorney to help litigate these issues more clearly and . . . also should've been granted an evidentiary hearing[.]" Docket 48 at 17. Magistrate Judge Duffy denied Carter's motion for appointment of counsel. Docket 38. The court agrees with Magistrate Judge Duffy's analysis of Carter's motion for appointment of counsel and overrules Carter's objection that he was not appointed counsel.

"[N]o [evidentiary] hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " *New v. United States,* 652 F.3d 949, 954 (8th Cir. 2011) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)). In this case, the record (Carter's federal court criminal proceeding, Carter's state court criminal proceeding, and this § 2255 proceeding) affirmatively refutes the factual assertions upon which Carter's claims are based. Thus, no evidentiary hearing was required. Carter's objection that he should have been granted an evidentiary hearing is overruled.

### E.   Carter's Remaining Objections

Carter argues that there is no excuse for his lawyer not calling his witnesses, filing a suppression motion, or seeking a fingerprint expert on his behalf. Docket 48 at 9.  The report and recommendation details why Carter had failed to demonstrate that his trial counsel's decision not to call Morkve or his mother fell below the standard of reasonable legal representation or that he was prejudiced by the decision. Docket 42 at 31–38. The court agrees with Magistrate Judge Duffy's analysis and conclusion. Carter's conclusory objection asserting that there was no excuse for his lawyer not to call these witnesses is overruled.

The report and recommendation also details why Carter's trial counsel was not ineffective for failing to file a motion to suppress. *Id.* at 29–31. The court agrees with Magistrate Judge Duffy's analysis and conclusion with one modification. No search warrant was obtained before law enforcement officers retrieved items from above the bathroom ceiling tiles in Carter's residence, but no search warrant was required. When Carter was placed on parole, he agreed to "submit [his] person, property, place of residence, vehicle and personal effects to search and seizure at any time, with our without a search warrant, whenever reasonable suspicion is determined by a parole agent or law enforcement." Docket 48 at 26. "In the context of a [parole] search condition, reasonable suspicion that the [parolee] has violated the terms of his [parole] is sufficient to justify a search." *United States v. Becker*, 534 F.3d 952, 956 (8th Cir. 2008). Reasonable suspicion does not rise to the level required for probable

cause and falls far short of meeting the preponderance of the evidence standard. *United States v. Schaefer*, 64 F.4th 1004, 1007 (8th Cir. 2023). "Reasonable suspicion exists when, considering the totality of the circumstances known to the officer at the time, the officer has a particularized and objective basis for suspecting wrongdoing." *Id.* (quoting *United States v. Hamilton*, 591 F.3d 1017, 1022 (8th Cir. 2010)).

Carter's January 14, 2021, telephone call to his father, which was recorded, when considered in context of the totality of the information available to Erickson and the parole agents who participated in the search of Carter's residence, was sufficient to justify the warrantless parole search. *See generally* CR Docket 103 at 21–22. Carter's objection that his trial counsel was ineffective for failing to file a motion to suppress is overruled.

Carter's § 2255 motion does not allege that his trial counsel was ineffective for failing to call a fingerprint expert to testify on his behalf. *See generally* Docket 1. But one of his supplemental pleadings asserts that his trial counsel was ineffective for "not focusing on the 'reliability' of just how accurate fingerprint analysis truly is by calling an expert witness[.]" Docket 10 at 18. A habeas petitioner alleging ineffective assistance counsel for failing to call an expert must point to specific expert testimony or opinions that would have been rendered and had the potential to change the outcome of his trial. *Ashker v. Class*, 152 F.3d 863, 876 (8th Cir. 1998) (finding no prejudice where defendant "made no showing that the relevant tests by an expert witness would have exculpated him"); *Ellefson v. Hopkins*, 5 F.3d 1149, 1150–51 (8th Cir.

19

1993) (per curiam) (trial counsel's strategy to forego calling expert and rely on cross-examination of prosecution expert deemed not ineffective assistance of counsel); *see also Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (stating that speculation as to what an expert would say is not enough to establish prejudice). Carter fails to identify any specific expert, substantiate what the expert's testimony would have been, or demonstrate how such evidence would have exculpated him. His argument is conclusory and speculative. Further, during cross-examination of the government's computer forensic examiner, Carter's counsel elicited testimony confirming that the Western Digital hard drive had been examined for fingerprints and that Carter's fingerprints were not found on that device. CR Docket 103 at 113. The government's expert also admitted that she was unable to determine who had accessed the child pornography on the Western Digital hard drive. *Id.* at 103. Carter's objection that his trial counsel was ineffective for not calling a fingerprint expert is overruled.

## III.   Carter's Miscellaneous Motions

Carter filed various motions before the magistrate judge's report and recommendation was entered. Dockets 8, 25, 26, 34, 35. The court agrees that these motions should be denied for the same reasons that the government's motion to dismiss, Docket 22, is granted, and that Carter's § 2255 motion is dismissed with prejudice. Thus, the court adopts the magistrate judge's recommendation that these motions be denied. *See* Docket 42 at 41.

20

Since the magistrate judge's report and recommendation was filed, Carter has filed various motions. *See* Dockets 47, 53, 54, 55, 56, 57, 59, 60, 61, 62, 64, 66, 67, 68, 70.

### A.    Motions that Do Not Seek Additional Relief Beyond the Relief Requested in Carter's § 2255 Motion

Carter filed a motion entitled "Motion to Please Give Matthew Carter A Fair Oppurtunity [sic][.]" which the court construes as additional objections to the report and recommendation because Carter seeks no additional relief beyond what is set forth in his § 2255 motion. Docket 53. Thus, the motion is denied as moot.[11] Carter also filed a motion requesting that the court "not be so 'critical' and so 'quick to dismiss' " his valid claims. Docket 54. Again, Carter seeks no additional relief beyond what is set forth in his § 2255 motion. *Id.* Further, the court is aware of the applicable legal standards when considering pro se filings and has considered Carter's filings with these standards in mind notwithstanding his motion. Thus, Carter's motion (Docket 54) is denied as moot.

Along with his objections to the report and recommendation, Carter filed a document requesting that the court reconsider granting five following

---

[11] The deadline for filings objections to the report and recommendation was August 22, 2023. Docket 42 at 41. Carter's "motion" is dated August 30, 2023. Docket 53 at 6. To the extent he seeks to submit additional objections, the objections are untimely. But the arguments Carter raises in his "Motion to Please Give Matthew Carter A Fair Oppurtunity [sic][.]" Docket 53, are duplicative of the arguments set forth in his § 2255 motion, opposition to the government's motion to dismiss, and timely objections to the report and recommendation. *See* Dockets 1, 25–31, 34–37, 48. Thus, the court declines to strike the untimely objections.

motions (Docket 47), but it does not appear that Carter included copies of the five motions referenced in his pleading. Nevertheless, as previously stated, the court adopts the magistrate judge's recommendation that the various motions Carter filed before the report and recommendation was entered be dismissed. *See supra* at 20 (adopting recommendation to dismiss Dockets 8, 25, 26, 34, 35). The court has also denied Carter's motion for reconsideration of the order denying his motion challenging the legality of the superseding indictment. *See supra* at 16.

Finally, Carter filed a motion requesting that the court compel the United States to set him free because the government has "attempted to procure/obtain a conviction by lies, deciet [sic], framing methods, Constitutional deprivations/violations, and even more lies." Docket 61. Carter's motion provides no facts to support his conclusory allegations, all of which appear to be duplicative of the claims raised in his initial § 2255 motion and supplemental pleadings. Carter's "Motion to Dismiss Entire Federal Case (4:21-CR-40073-KES) with Prejudice" (Docket 61) is denied for the same reasons that the government's motion to dismiss (Docket 22) is granted.

### B.    Motion for Discovery

On September 11, 2023, nearly a month after Carter filed objections to the magistrate judge's report and recommendation, Carter filed a motion requesting discovery of grand jury transcripts. Docket 55. He asserts that he has "reasons to believe" that perjury occurred during the grand jury proceedings. *Id.* "A judge may, for good cause, authorize a party to conduct

discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a), Rules Governing Section 2255 Proceedings for the United States District Courts. Because the only discovery Carter seeks is grand jury transcripts, Carter must demonstrate "a particularized need" that outweighs the general rule of grand jury secrecy. *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 220–23 (1979). Carter does not state with any specificity how any allegedly perjured grand jury testimony may entitle him to relief under 28 U.S.C. § 2255. Nor does Carter explain how the requested discovery relates to any of his claimed grounds for relief. Finally, Carter does not even provide any facts to support his conclusory allegations that he "has reason to believe" that one or more witnesses did not testify truthfully before the grand jury. Carter does not identify the witness or witnesses whom allegedly testified falsely, and he does not limit his discovery request to the allegedly false testimony. Thus, Carter has not established that there is good cause to order production of any grand jury transcripts. Carter's motion for discovery, Docket 55, is denied. For the same reasons, Carter's motion to compel production of unredacted grand jury transcripts, Docket 60, is denied.

### C.      Motion for Relief from Judgment

Carter moves for relief from "judgment" under Federal Rule of Civil Procedure 60 and Federal Rule of Criminal Procedure 52. Docket 56. No judgment has been entered in this case, and Federal Rule of Civil Procedure 60 does not permit a court to order relief from a criminal judgment of conviction.

Carter may not seek relief from a criminal judgment of conviction under Federal Rule of Criminal Procedure 52 in this § 2255 proceeding. For these reasons, Carter's motion for relief from judgment (Docket 56) is denied.

### D.    Motion Preserving Rights

Carter moves to preserve his rights[12] under 18 U.S.C. § 2235 and § 2236. Docket 57. Neither of these statutes gives Carter any rights he can seek to enforce in this § 2255 proceeding. Section 2333 provides a civil cause of action for "[a]ny national of the United States injured . . . by reason of an act of international terrorism[.]" Section 2235 sets forth the applicable statute of limitations for a suit seeking to recover damages under 18 U.S.C. § 2333.  *See* 18 U.S.C. § 2235.  Section 2236 provides that "[n]o action shall be maintained under section 2333 . . . for injury or loss by reason of an act of war." 18 U.S.C. § 2236(a). Carter does not seek civil damages for an act of international terrorism. Simply put, 18 U.S.C. §§ 2235 and 2236 have no application to this proceeding, and Carter's motion to preserve his rights (Docket 57) is denied.

### E.    Motions for Return of Property

Carter moves pursuant to Federal Rule of Criminal Procedure 41(g) for "return of (ALL) property seized illegally by the government, including . . . [his] computer, [his] (black) Xioami Mi 8 Lite cellphone, (ALL) Flash drives, [and] a digital camcorder w[ith] SD card[.]" Docket 59. As the magistrate judge correctly stated when denying Carter's previous motion for return of property

---

[12] As the court previously noted, *see supra* at 16 n.10, the applicable rules of procedure do not provide for "motions preserving rights."  This motion (Docket 57) is also be denied on procedural grounds.

(Docket 14), "[a]ny motions for return of evidence must be filed in Mr. Carter's criminal case, not this civil case." *See* Docket 39. Thus, Carter's motion for return of property (Docket 59), Carter's motion to compel production of a receipt and inventory of items seized (Docket 68), and motion for return of seized property (Docket 70) are denied.

### F.    Motion to Nullify Attorney's Fees

Carter seeks an order from this court declaring that he is exempt from paying fees for court-appointed attorneys pursuant to SDCL § 27A-12-3.17 because he is mentally ill. Docket 62. In support of his motion, Carter provided copies of invoices he received from the Yankton County Treasurer for legal services provided to Carter in his state criminal proceedings. Docket 62-1 at 4–7. This court has no authority is this proceeding seeking to set aside his federal criminal conviction to consider whether Carter is exempt under South Dakota law from paying fees for court-appointed attorneys in state criminal proceedings. Carter's motion to nullify (Docket 62) is denied.

### G.    Motions for Judgment Under Rule 55(d)

Carter moves for judgment in his favor under Federal Rule of Civil Procedure 55(d) on the grounds that the "government has failed to defend against the claims presented herein this Federal Habeas Corpus § 2254 [sic] civil action." Docket 66 at 1. He has filed a second motion for judgment pursuant to Rule 55(d) arguing that certain facts that he alleges are undisputed and establish a violation of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. *See* Docket 67.

25

Federal Rule of Civil Procedure 55(d) provides that "[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Carter is not entitled to relief under Rule 55 because the government is not in default. The government has not failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a). The magistrate judge ordered the government to serve and file an answer or responsive pleading to Carter's § 2255. Docket 3 at 2. The government requested and was granted an extension of time to respond to Carter's § 2255 motion to permit Carter's former counsel to file an affidavit responding to his allegations of ineffective assistance of counsel after Carter executed and returned an attorney-client privilege waiver form. Docket 7 at 3. The government filed a second motion for extension of time to file a response to Carter's § 2255 motion, which was granted. Dockets 19, 20. The government's response to Carter's § 2255 motion (Docket 21), motion to dismiss (Docket 22), and supporting memorandum (Docket 23), all of which were filed on March 21, 2023, were timely. *See* Docket 20 (ordering the government to file its response on or before March 27, 2023). Carter's motions for judgment in his favor under Rule 55(d) (Dockets 66, 67) are denied.

## IV.   Certificate of Appealability

When a district court denies a petitioner's § 2255 motion, the petitioner must first obtain a certificate of appealability before an appeal of that denial may be entertained. *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). This certificate may be issued "only if the applicant has made a substantial showing

26

of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that proves "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Carter has not made a substantial showing that his claims are debatable among reasonable jurists, that another court could resolve the issues raised in his claims differently, or that a question raised by his claims deserves additional proceedings. Thus, a certificate of appealability is not issued.

For these reasons, IT IS ORDERED:

1.    That the magistrate judge's report and recommendation (Docket 42) is adopted as modified.

2.    That respondents' motion to dismiss (Docket 22) is granted, and Carter's § 2255 motion is dismissed with prejudice and without an evidentiary hearing.

3.    That Carter's objections to the report and recommendation (Docket 48) are overruled.

4.    That Carter's motion for mistrial (Docket 8), motion for judgment (Docket 25), motion to dismiss government's motion to dismiss (Docket 26), and motions to preserve rights (Dockets 34, 35) are denied.

27

5.    That Carter's motion for reconsideration of the order denying his motion challenging the legality of the superseding indictment (Docket 43) is denied.

6.    That Carter's motion preserving rights (Docket 64) is denied.

7.    That Carter's "Motion to Give Matthew Carter A Fair Oppurtunity [sic]" (Docket 53) is denied as moot.

8.    That Carter's motion requesting that the court "not be so 'critical' and so 'quick to dismiss' " his valid claims (Docket 54) is denied as moot.

9.    That Carter's motion to reconsider (Docket 47) is denied.

10.   That Carter's "Motion to Dismiss Entire Federal Case (4:21-CR-40073-KES) with Prejudice" (Docket 61) is denied.

11.   That Carter's motion for discovery (Docket 55) and motion to compel production of unredacted grand jury transcripts (Docket 60) are denied.

12.   That Carter's motion for relief from judgment (Docket 56) is denied.

13.   That Carter's motion preserving rights (Docket 57) is denied.

14.   That Carter's motion for return of property (Docket 59), motion to compel production of a receipt and inventory of items seized (Docket 68), and motion for return of seized property (Docket 70) are denied.

15.   That Carter's motion to nullify attorney's fees (Docket 62) is denied.

16.   That Carter's motions for judgment in his favor under Rule 55(d) (Dockets 66, 67) are denied.

17.    For the reasons set forth herein and pursuant to Fed. R. App. P. 22(b), the court finds that Carter has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Thus, a certificate of appealability is denied.

Dated June 25, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE